SANDUSKY DOCK CORPORATION, APPELLEE, *v*. JONES, DIR., APPELLANT.

[Cite as *Sandusky Dock Corp. v. Jones,*
106 Ohio St.3d 274, 2005-Ohio-4982.]

(No. 2004–0261—Submitted February 15, 2005—Decided October 5, 2005.)

---

PFEIFER, J.

{¶ 1} Appellee, Sandusky Dock Corporation, operates a coal-loading facility in Sandusky on the shores of Lake Erie. At the facility, Sandusky Dock receives, stores, and loads extensive amounts of coal. Sandusky Dock has a permit to operate ("PTO") issued by the Ohio Environmental Protection Agency ("OEPA").

Before the modification of the permit at issue, certain rules limiting visible emissions were inapplicable to the facility because of its geographical location. Ohio Adm.Code 3745–17–08(A). In 1996, Sandusky Dock voluntarily implemented a control system, consisting primarily of cannons that spray water on the coal, to limit the amount of fugitive coal dust. " ' Fugitive dust' means particulate matter which is emitted from any source by means other than a stack." Ohio Adm.Code 3745–17–01(B)(6). Despite these control measures, large stockpiles of coal, at times reaching heights of 60 feet, combined with strong winds off Lake Erie, often result in fugitive coal dust.

{¶ 2} In June 2000, a patron from a local marina filed a verified complaint with the OEPA concerning coal-dust emissions from Sandusky Dock's facility. An accompanying petition of nearly 100 marina patrons complained of dust settling on and damaging boats docked in the marina. In response to the complaint, appellant, the Director of Environmental Protection, commenced an investigation, which culminated in a finding that probable cause existed to support the conclusion that fugitive coal dust from Sandusky Dock's facility constituted a public nuisance in violation of Ohio Adm.Code 3745–15–07(A). The director modified Sandusky Dock's PTO, pursuant to R.C. 3704.03(G), by requiring Sandusky to use emission-control measures pursuant to Ohio Adm.Code 3745–17–08(B). The control measures were expected to bring the facility's coal-dust emissions into compliance with Ohio Adm.Code 3745–17–07(B)(6), which limits visible emissions to 13 minutes in any hour.

{¶ 3} Sandusky Dock appealed to the Environmental Review Appeals Commission ("ERAC"), arguing in its first assignment of error that the modified PTO was unlawful because the requirements were "technically infeasible and economically unreasonable" and thus did not comport with R.C. 3704.03(R). Sandusky Dock argued in its second assignment of error that the conclusion that the fugitive coal dust constituted a public nuisance under Ohio Adm.Code 3745–15–07(A) was unsupported. Upon the director's motion, the ERAC dismissed Sandusky Dock's first assignment of error and excluded all evidence pertaining to the technical feasibility and economic reasonableness of the PTO modification. The ERAC then concluded that the director had been justified in finding that the fugitive dust constituted a public nuisance.

{¶ 4} Sandusky Dock appealed, and the court of appeals reversed. The court disagreed with the director's interpretation that R.C. 3704.03(G) and (R) constitute distinct authorizations of action that can be applied at the discretion of the director in restricting the emissions of a facility having a PTO. The court concluded:

{¶ 5} "When R.C. 3704.03(G) is read in conjunction with R.C. 3704.03(R), it is readily apparent that the director may not act by PTO to require the abatement

of or prohibit emissions which violate visible emission standards * * *, or require emission control measures * * *. Rather, pursuant to R.C. 3704.03(R), the director must take such action by order, giving consideration to, and basing his determination on, evidence relating to the technical feasibility and economic reasonableness of compliance with the order. Only after such an order has been issued, may the director take action with respect to a PTO pursuant to R.C. 3704.03(G)." 2003-Ohio-7027, 2003 WL 22999379, at ¶ 9.

{¶ 6} Based on this reasoning, the court of appeals reversed the decision of the ERAC, ruling that the director had exceeded his authority by modifying the PTO without consideration of the technical feasibility and economic reasonableness of compliance with the emissions restrictions imposed by the modified PTO. The court also declared the second assignment of error, that the finding of nuisance was unsupported, moot, and remanded the cause to the ERAC.

{¶ 7} The cause is before this court upon the acceptance of a discretionary appeal.

{¶ 8} We are guided by two potentially conflicting principles when reviewing the director's interpretation of the provisions of R.C. Chapter 3704. First, we will give due deference to the director's "reasonable interpretation of the legislative scheme" governing his agency. *Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad* (2001), 92 Ohio St.3d 282, 287, 750 N.E.2d 130. Second, "any uncertainty with regard to the interpretation of R.C. Chapter 3704 and rules promulgated thereunder should be construed in favor of the person or entity (manufacturer or otherwise) affected by the law." *State ex rel. Celebrezze v. Natl. Lime & Stone Co.* (1994), 68 Ohio St.3d 377, 385, 627 N.E.2d 538.

{¶ 9} R.C. 3704.03(G) provides:

{¶ 10} "The director of environmental protection may do any of the following:

{¶ 11} " * * *

{¶ 12} "(G) Adopt, modify, suspend, and rescind rules prohibiting the operation or other use of any new, modified, or existing air contaminant source unless an operating permit has been obtained from the director or his authorized representative, [or [1]] the air contaminant source is being operated in compliance with the conditions of a variance issued pursuant to division (H) of this section. * * * No application shall be denied or permit revoked or modified without a written order stating the findings upon which denial, revocation, or modification is based."

{¶ 13} R.C. 3704.03(R) provides:

{¶ 14} "The director of environmental protection may do any of the following:

---

1. The word "or," needed to make sense of the sentence, was originally in the statute but was deleted by 1993 Am.Sub.S.B. No. 53, 145 Ohio Laws, Part I, 1454.

{¶ 15} " * * *

{¶ 16} "(R) Issue, modify, or revoke orders requiring abatement of or prohibiting emissions which violate applicable emission standards or other requirements of this chapter and rules adopted thereunder, or requiring emission control devices or measures in order to comply with applicable emission standards or other requirements of this chapter and rules adopted thereunder. * * * In the making of such orders, the director, to the extent consistent with the federal Clean Air Act, shall give consideration to, and base his determination on, evidence relating to the technical feasibility and economic reasonableness of compliance with such orders and their relation to benefits to the people of the state to be derived from such compliance."

{¶ 17} The director contends that R.C. 3704.03(G) and (R) independently authorize him to address emission standards. He concludes, therefore, that the modification of Sandusky Dock's PTO was authorized pursuant to R.C. 3704.03(G), which does not incorporate the feasibility and reasonableness tests of R.C. 3704.03(R). Sandusky Dock counters that the modification of its PTO is governed by R.C. 3704.03(R) because the modification imposes restrictions on emissions and that the application of R.C. 3704.03(R) should not hinge on whether a facility needs a PTO. We are persuaded that Sandusky Dock's position is more sound and, furthermore, that the director's position is not reasonable.

{¶ 18} The modified PTO compels Sandusky Dock to comply with Ohio Adm.Code 3745–17–07(B)(6), which requires that there be "no visible particulate emissions from any material storage pile except for a period of time not to exceed thirteen minutes during any sixty-minute observation period." Although the director's order is consistent with his authority under R.C. 3704.03(G), we cannot, as the director urges, consider R.C. 3704.03(G) and (R) independently. The unavoidable conclusion is that when a modification of a PTO authorized generally by R.C. 3704.03(G) implicates a more specific provision of R.C. Chapter 3704, the director's general authority must give way. When, as in this case, a PTO modification "requir[es] abatement of or prohibit[s] emissions," R.C. 3704.03(R) governs the director's authority. R.C. 3704.03(R) requires the director to "give consideration to, and base his determination on, evidence relating to the technical feasibility and economic reasonableness of compliance." The record does not indicate that the director complied with this requirement.

{¶ 19} If the director's authority in this case were not governed by R.C. 3704.03(R), he could modify a facility's PTO to restrict emissions without considering feasibility and reasonableness, even though he would have to consider feasibility and reasonableness before restricting emissions of a facility that had no PTO. That distinction would disadvantage facilities having PTOs and defies

common sense. The legislative scheme does not evince an intent to more stringently regulate facilities with PTOs than facilities without PTOs.

{¶ 20} The director's PTO modification in this case was issued without formal consideration of "technical feasibility and economic reasonableness." Consideration of these factors is necessary to ensure that the balance between regulation and encouragement of business is properly struck. See *Natl. Lime*, 68 Ohio St.3d at 384, 627 N.E.2d 538 ("the General Assembly intended to strike a balance between the prevention, control and abatement of air pollution and excessive regulation or unwarranted interruption of a business to the point where it can no longer function competitively").

{¶ 21} Finally, the director states in his brief that "as a practical matter, the Director does, of course, take [technical feasibility and economic reasonableness] into account." The director essentially recognizes that the standards of R.C. 3704.03(R) are appropriate to this case and admits that he considered these factors, though not formally. We deem it a short but necessary step for the director to formally comply with R.C. 3704.03(R). For the foregoing reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, Diane Richards Brey, Deputy Solicitor, and John K. McManus, Assistant Attorney General, for appellant.

Tucker, Ellis & West, L.L.P., Martin H. Lewis, and Richelle W. Kidder, for appellee.